[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
At issue in this case is the Commissioner of Environmental Protection's claim that defendant Town of Old Saybrook is a municipality which is maintaining conditions which can reasonably be anticipated to cause pollution of the waters of the State of Connecticut, pursuant to General Statutes Section 22a-428. The DEP has issued four orders to the defendant in regard to solving the alleged pollution problems, and claims that the defendant has failed to comply with these orders. It now seeks injunctive relief, penalties, and an order requiring the defendant's legislative body to authorize the necessary funds to undertake and complete any action necessary to comply with an Order No. 4116 Modified, as required by General Statutes § 22a-458.
In Count 1 of the Substituted Amended Complaint dated February 18, 1992 the plaintiff, DEP, alleges that it issued an Order No. 3109 to the defendant, having found that the defendant is a municipality maintaining conditions which can reasonably be anticipated to cause pollution of the waters of the State, and that the defendant failed to comply with the order.
In Count 2 the DEP alleges that it issued an Order No. 3110 to the defendant and that the defendant failed CT Page 12329 to comply with the order.
In Count 3 the DEP alleges that it issued an Order No. 3111 to the defendant and that the defendant failed to comply with the order.
In Count 4 the DEP alleges that defendant has failed to implement the monitoring, inspection and the individual on-site waste-water disposal system maintenance programs required by Orders No. 3109, 3110, and 3111, and by failing to do so it has caused pollution of the waters of the State in violation of General Statutes § 22a-427.
In the fifth Count the DEP alleges that the defendant has failed to implement the monitoring, inspection and the individual on-site wastewater disposal system maintenance programs required by Orders No. 3109, 3110 and 3111 and by failing to do so has caused unreasonable pollution or destruction of the water and other natural resources of the State in violation of General Statutes § 22a-14, et seq.
In the sixth Count the DEP alleges that on December 31, 1985 it issued Order No. 4116 to the defendant which required the submission of a report to the DEP concerning wastewater management problems. Said report was to include a recommended schedule for implementation of necessary corrective actions. The DEP alleges that although the report was approved by the Defendant and the DEP, defendant failed to implement the recommended and approved construction of a wastewater f treatment facility in accordance with the recommended and approved schedule set forth in the report, and that by failing to do so defendant has caused pollution in violation of § 22a-427 of the General Statutes.
In the seventh Count the DEP alleges that the report submitted pursuant to Order No. 4116 proposed a time schedule to implement the recommended construction of a regional wastewater treatment facility, and by failing to implement the approved recommendations of the report the defendant has caused to incur unreasonable pollution, impairment or destruction of the water and other natural resources of the State in violation of General Statutes CT Page 12330 § 22a-14, et seq.
In the eighth Count the DEP alleges that it notified the defendant that the report submitted pursuant to Order 4116 would have to be modified in order to proceed with any State funding for the approved regional wastewater treatment facility. DEP further alleges that a proposed Order Modification No. 4116 was sent to defendant and approved by it in accordance with § 22a-436, but that a referendum to appropriate funds to proceed with its portion of the approved regional wastewater treatment facility was defeated. DEP further alleges that the legislative body of the defendant has failed to comply with Order No. 4116 Modified, by failing to authorize the necessary funds to comply with Order No. 4116 Modified as required by § 22a-458.
Unquestionably there is a pollution problem in the Town of Old Saybrook. This was found to be so in reports prepared by Malcolm Pirnie Engineers (Exhibits A, W, and X); report prepared by Hayden-Wegman (Exhibit MM); document prepared by Board of Selectmen entitled "Recommended Approach, Wastewater Management in the Town of Old Saybrook" (Exhibit YYY); report of NEXUS Engineering Associates (Exhibit WWW); and correspondence from Weston Sampson Engineers, Inc. to First Selectman of Old Saybrook (Exhibits DDDD and EEEE).
It is also clear that the Town, through its present Board of Selectmen and Water Pollution Control Authority, is aware of the pollution problems and has been endeavoring to come up with solutions to the problem. (Testimony of Roger W. Goodnow, transcript dated March 29 and 30, 1994 pages 233-262.) However, the Town has failed to come up with solutions which would satisfy the directives of the DEP and there has been little action on the Town's part which would actually solve the pollution problem. "While there have been discussions and alternatives pursued in discussions between the two parties to come to a resolution, there has been no firm proposal from the Town that says this is what we would exactly desire to propose and if allowed we are willing to build this proposal" (Testimony of William Hogan, Transcript March 30, 1994 page 283.) CT Page 12331
Thus, in light of the Town's failure to solve the pollution problems in a satisfactory manner, the DEP issued certain orders which will now be addressed.
Orders No. 3109, 3110, 3111
In the 1970's and 1980's Malcolm Pirnie Engineers prepared engineering reports which identified areas of Old Saybrook where septic tanks were failing or where the wastewater was improperly renovated prior to entering the groundwater. Field work conducted by Malcolm Pirnie in 1981, when individual sites within Old Saybrook were inspected, confirmed that there were failing septic systems within the Town. The final engineering report (Exhibit W) shows that, based upon a site survey of 740 residential properties, a significant percentage of homes had non-repairable septic systems. Two reasons given why they couldn't be repaired were the small lot size and the high groundwater table. The engineering reports (Exhibits A and W) documented a large number of lots with failing and unrepairable septic systems, which required an off-site structural solution.
During the early 1980's the DEP worked with Old Saybrook and other coastal towns to develop and implement a sewer avoidance program, consisting of septic system monitoring, inspection, and maintenance programs. The specifics of the implementation and content of the monitoring, inspection and maintenance programs were contained within the Malcolm Pirnie engineering reports (Exhibits A and X).
In order to make the programs suggested in the Pirnie reports (Exhibits A and X) enforceable against Old Saybrook, DEP desired to issue orders (Exhibit B) and it issued proposed orders to the Town Attorney. After some negotiation, the DEP issued three orders. Order No. 3109 (Exhibit I) requires implementation of the monitoring program recommended in the Pirnie reports. Order No. 3110 (Exhibit J) requires implementation of the inspection program recommended in the Pirnie reports. Order No. 3111 (Exhibit K) requires implementation of the individual on-site wastewater disposal system maintenance program recommended in the Pirnie reports. Old Saybrook did not appeal these orders, having agreed to their terms CT Page 12332 (Exhibit H).
In spite of the fact that the Town agreed to the terms of the three orders, it has failed to comply with them although each of the orders had a compliance schedule attached to it. Orders No. 3109 and 3110 have ongoing requirements that the Town submit annual reports. Order No. 3111 implies that an enforcement program would go on year after year. (Transcript February 16, 1994 pp. 29-33.) Despite the findings in the engineering reports, beginning in 1980, identifying actual septic system failures, the Town since 1983 has, for the most part, failed to comply with the ongoing requirements of these orders. (Transcript February 16, 1994 pp. 32, 33, 39, 40; transcript March 29, 1994 pp. 75, 76, 118, 119, 120). Information on home inspections submitted by the Town to DEP in 1991 was incomplete or non-existent for the years 1985 through 1994.
Clearly, the Town has failed to comply with Orders No. 3109, 3110, 3111.
Order No. 4116, Modified
In 1984 the DEP wrote to Barbara Maynard (First Selectman and Chairman of the Water Pollution Control Authority of Old Saybrook), and at her request set forth the process necessary to initiate a regional Wastewater Management Study (Exhibit BB). Part of that process was to select an engineer to conduct the study. The study would be for the towns of Old Saybrook and Westbrook to combine in a regional study to find solutions to failing septic systems.
Subsequently, a copy of a proposed Order No. 4116 was sent by DEP to Old Saybrook and Westbrook. The Order would require a regional study to be submitted to DEP for its approval, with the aim of implementing the recommendations of that study (Exhibit FF). The proposed order was reviewed by the Old Saybrook Town Attorney, who wrote a letter to DEP on December 11, 1985 regarding changes acceptable to Old Saybrook. The primary change was the removal of a paragraph which would have required implementation of the future and unknown recommendations contained within the yet to be completed regional study. CT Page 12333 DEP did remove that paragraph and Order No. 4116 was issued, dated December 31, 1985 to which Old Saybrook agreed (Exhibit HH) (transcript February 16, 1994 pg. 50). Said order provided as follows:
 "Having found that the Towns of Westbrook and Old Saybrook are municipalities in which community pollution problems exist and in which community pollution problems can reasonably be anticipated to occur in the future under the provisions of Chapter 446k of the General Statutes as amended, the Commissioner of Environmental Protection acting under Section 22a-428 hereby Orders the Town of Old Saybrook to take such action as is necessary to:
 1) As the lead Town for the region prepare an engineering report which verifies and/or identifies present and future wastewater management problems, assesses resources available for the treatment and disposal of the wastewaters generated in both communities and develops and recommends specific methods to solve the identified problems. Such engineering report shall include a recommended schedule for implementation of necessary corrective actions.
 "The Town of Old Saybrook is further Ordered to accomplish the above described program, except as amended by the recommendations of detailed engineering study and agreed to by the Commissioner of Environmental Protection in accordance with the following schedule:
 A) On or before December 31, 1987 submit for the review and approval of the Commissioner of Environmental Protection an engineering report to meet the requirements of paragraph 1."
After agreeing to the terms of Order No. 4116, Old Saybrook engaged engineering consultant Hayden-Wegman to CT Page 12334 prepare the regional study or engineering report. The study included the towns of Old Saybrook, Westbrook, and, at its request, the Town of Clinton.
All relevant Old Saybrook officials were kept up-to-date as the engineering consultant developed the study, as was the public at large, through the public participation program set forth in the approved scope of services. That program included advisory committees, workshops and newsletters prior to the final report, and informational and town meetings after the report was approved. The Old Saybrook Board of Selectmen which acted as the Water Pollution Control Authority was most involved, with Barbara Maynard, the First Selectman, the chief executive officer as well as the chairman of the Water Pollution Control Authority, being the number one or lead town official.
After the engineering report was prepared in draft by Hayden-Wegman in the late spring of 1988, the First Selectmen of Old Saybrook and Westbrook called a meeting with a variety of boards and commissions for June 30, 1988 regarding the contents of the draft Hayden-Wegman report. The notice of the meeting was sent to the Board of Finance, Planning Commissions, Zoning Commissions, Inland Wetlands Commissions, the Wastewater Study Committee (an ad hoc committee), town attorneys, sanitarians, and the Old Saybrook Director of Health, to obtain their attendance so they would understand the problems and proposed solutions set forth in the draft Hayden-Wegman report.
Thus, it was with the full knowledge and input of Old Saybrook officials and members of the public that the Board of Selectmen, in its capacity of Water Pollution Control Authority, unanimously approved acceptance of the "Hayden-Wegman Old Saybrook-Westbrook Joint Wastewater Management Study Final Draft, revised March 1989" on June 1, 1989 (Exhibit KK). Thereafter, the engineering report was submitted to and approved by the DEP.
The Hayden-Wegman report, as had the 1980 Malcolm Pirnie report before it, again identified significant numbers of unrepairable septic system failures, based upon 855 homes in Old Saybrook which were evaluated in CT Page 12335 detail (Exhibit MM). The report recommended that the off-site structural solution for these failing systems be sewers to convey the waste through gravity systems and pump stations to a treatment plant with a discharge into the Connecticut River.
The report also reviewed an alternative of on-site management, and a community septic system. The on-site alternative was found not feasible where a septic system is failing and not repairable. The community septic system alternative was found to be infeasible, as it was in the Malcolm Pirnie report of 1981, because of insufficient land within Old Saybrook to which the septic waste could be conveyed.
After the report was approved by the parties, the DEP put the Town on notice that Order No. 4116 would have to be modified so that the recommendations set forth in the study could be implemented. After much negotiation between the parties concerning such a proposed modification, Order No. 4116 Modified was issued by the DEP. However, the recommendations in the Hayden-Wegman report have never been implemented, and Order No. 4116 Modified has not been complied with.
The Town has raised several issues which the Court will now discuss.
First: The Town claims that it did not agree that the modified order be issued, and therefore the modified order is invalid. The Court disagrees. The following evidence indicates that the Town did in fact agree to the modified order:
1. The Town of Old Saybrook agreed to Order No. 4116 as originally issued. That order states that the towns of Westbrook and Old Saybrook are municipalities in which community pollution problems "can reasonably be anticipated to occur in the future . . ." The order which requires the Town to prepare an engineering report specifically provides that the report "shall include a recommended schedule for implementation of necessary corrective actions." Clearly, the Town contemplated that implementation of necessary corrective actions would take place. CT Page 12336
2. In a June 8, 1989 letter from DEP to the Old Saybrook First Selectmen (Exhibit OO) Old Saybrook received proposed modifications to Order No. 4116. These modifications "delineate an enforceable schedule for implementation of the project as recommended in the Hayden-Wegman facilities plan." (Exhibit PP.) In the June 8 letter the Town was put on notice that in order to obtain DEP funding for the project, such a DEP order would need to be in existence. The letter also stated that the DEP intended to finalize a modified order sometime in July of 1989. Old Saybrook thereafter in a June 20, 1989 letter with attached Board of Selectmen Resolution (Exhibit RR) expressed interest in obtaining funding for its recommended treatment project from the State DEP. A Town would not go through the process of asking about and seeking State funding for a project if it did not intend to have an approved project to proceed with.
3. As had been done prior to the formal issuance of Orders No. 3109, 3110, 3111, and 4116, input from Old Saybrook was sought by DEP "regarding the content or implications of this order [modification of Order No. 4116]" or any suggested changes to the schedule of the proposed modification (Exhibit OO). In the previous instances, Old Saybrook Town Attorney Michael Cronin had provided written objections to and proposed language changes for the proposed orders (Exhibits C and GG). No written response was provided by Attorney Cronin to the proposed modification of Order No. 4116, sent on June 8, 1989, or any subsequent draft modifications.
4. Old Saybrook continued to express an interest in obtaining State DEP funding for the project (Exhibits RR, UU and XX). Clinton also, in a letter dated August 8, 1989 to DEP from its Town Attorney, sought written confirmation from DEP that funding for the project would be provided (Exhibit SS). DEP responded on September 1, 1989 to Clinton's Town Attorney (Exhibit TT), with copies to Old Saybrook's First Selectman Barbara Maynard and Town Attorney Michael Cronin, that DEP did have funding available. DEP also stated therein that as a condition for receiving State DEP funding, "[t]he municipalities must be under an Administrative Order, such Order to CT Page 12337 include a complete schedule for the project through design and construction." (Exhibit TT, p. 2, par. 1.)
5. In the late summer and early fall of 1989, William Hogan of the DEP attended three meetings, with Barbara Maynard and Michael Cronin in attendance, where the proposed order modification of Order No. 4116 was an important item of discussion. The first meeting, on August 3, 1989, was in Clinton, where input was received from the three towns on the proposed order modification sent in DEP's June, 1989 letters (Exhibit OO, PP, QQ) to the three towns. Another meeting, in Westbrook, on September 19, 1989 further discussed the proposed order modification, and the requirement that it be in place if DEP funding was to be provided. This September 19, 1989 meeting, at which a second draft of DEP's proposed order modification was discussed, elicited final comments and concerns of the three towns relative to the order modification.
6. Following this September 19, 1989 meeting, a final modification of Order No. 4116 was sent to then Commissioner of Environmental Protection, Leslie Carothers, for her signature, because DEP officials believed that all issues and concerns of the three towns regarding an order modification were resolved, and that the Towns had agreed to the issuance of an order modification (transcript March 29, 1994 pp. 27, 28).
7. The third meeting which William Hogan attended with Old Saybrook officials, including First Selectman Maynard and Town Attorney Cronin, was on October 20, 1989. During this strategy meeting, in preparation for a Board of Finance meeting scheduled for October 24, 1989, First Selectman Maynard specifically requested William Hogan to bring the signed order modification to the October 24 meeting, if he could, so that the Board of Finance would understand that the Town was obligated to proceed with the project. Commissioner Carothers signed the order modification for Old Saybrook on October 20, 1989, that same day.
8. William Hogan, as requested, hand delivered Order Modification 4116 to First Selectman Barbara Maynard at the October 24 Board of Finance meeting. Attorney Cronin CT Page 12338 attended the October 24 meeting. If the order modification had been mailed, it would have been sent to First Selectman Maynard, but it was hand-delivered in lieu of mailing at her request. The Old Saybrook order modification, Exhibit GGG, has "MAILED CERTIFIED MAIL-RRR MAILED TO: Mrs. Barbara Maynard, First Selectman, Town of Old Saybrook . . ." typed at the bottom. The two identical order modifications for Clinton and Westbrook likewise contained the same mailing notation (Exhibits HHH and III). Those two order modifications were sent certified mail to both Clinton and Westbrook. DEP intended to mail the order modification to the Town of Old Saybrook through the First Selectman, but when requested by her to hand-deliver it, did so on October 24, 1989.
9. During the summer and fall of 1989, in addition to discussions and meetings on the order modifications and State funding among the three towns and DEP, the three towns were involved in lengthy negotiations to finalize an intermunicipal agreement. An intermunicipal agreement was a necessary requirement for a regional facility which would receive State funding. The Town of Old Saybrook, through the Board of Selectmen acting as the Water Pollution Control Authority, authorized the intermunicipal agreement to be signed on October 16, 1989 and it is dated October 18, 1989 (Exhibit DDD).
10. At a Board of Selectmen meeting held on October 19, 1989 two resolutions were unanimously approved for placement on a November 21, 1989 Town referendum. The first resolution would authorize an appropriation of money for design of and land acquisition for regional wastewater facilities and the second would authorize the Town to enter into the intermunicipal agreement (Exhibit BBB).
11. In early November the Town conducted two meetings to disseminate information to its citizens concerning the project. The first meeting, authorized by the Board of Selectmen on October 19, 1989 (see Exhibit BBB, page 3, first paragraph), was held on November 8, 1989 and the second was a special town meeting held November 13, 1989. Exhibit YY is the outline of a presentation given by First Selectman Maynard in support of the sewer project. CT Page 12339
A handout was prepared for the November 13, 1989 special town meeting by Old Saybrook's consulting engineer, Hayden Wegman, and the First Selectman, and distributed to the public (Exhibit LLL, T2-42). Town Attorney Cronin reviewed the hand-out (Exhibit LLL). Question 23 of the hand-out asks, "Q. ARE THE TOWNS UNDER STATE ORDERS? A. Yes. The Towns are currently under orders to design, construct, and operate the sewer system."
Although the referendum questions were defeated by Old Saybrook (Exhibit MMM), they were approved by voters in Westbrook and Clinton.
An exit poll conducted by Old Saybrook showed that "a large majority of responders to the poll realize that the DEP requires the three Towns to implement the project." (Exhibit NNN.) The minutes of the Old Saybrook Board of Selectmen meeting of November 29, 1989 reflect that Old Saybrook officials were aware that "DEP would like us to go to referendum as quickly as possible . . ."
12. Old Saybrook officials were further put on notice in a DEP letter from William Hogan that Order No. WC-4116 Modified required the Town of Old Saybrook to meet certain schedules which would not be possible due to the referendum defeat, and therefore a response as to the Town's future intentions was requested (Exhibit OOO).
Receipt of this letter was acknowledged by the First Selectman at a Water Pollution Control Authority meeting held December 12, 1989, which required the Town to establish a future schedule of action (Exhibit PPP). At a December 20, 1989 meeting of the Water Pollution Control Authority, the First Selectman's letter of response to William Hogan was approved (Exhibit RRR). In his letter, the First Selectman assured William Hogan "that the Old Saybrook Water Pollution Control Authority is moving as rapidly as possible to bring our proposed sewer project to a successful, affirmative referendum." (Exhibit SSS.)
13. The Town of Old Saybrook has admitted in plaintiff's request for admissions (Exhibit BBB) the following: CT Page 12340
 "a. That a meeting was held in Old Saybrook on October 20, 1989 between the First Selectman (Barbara Maynard), the Town Attorney (Michael Cronin), the Board of Finance Chairman (Burton Chapman), the Town Sanitarian (Jack Milkofsky) and a DEP official (William Hogan).
 "b. That a purpose of the October 20, 1989 meeting was to discuss the steps to implement the sewer project through a town appropriation for Old Saybrook's share of the project costs.
 "c. That at the October 20, 1989 meeting there was discussion of the upcoming October 24, 1989 Board of Finance meeting at which the request for an appropriation to fund Old Saybrook's share of the sewer project costs was an agenda item.
 "d. That at the October 20, 1989 meeting it was agreed that a signed order modification similar to the draft order modification previously sent to the First Selectman, would be useful for the October 24, 1989 meeting.
 "e. That the First Selectman specifically requested William Hogan to deliver a signed order modification to her on October 24, 1989 at The Board of Fiance [Finance] Meeting with copies to the entire board.
 "f. That William Hogan delivered the original Modification signed by the Commissioner of Environmental Protection, to the First Selectman prior to the Board of Finance meeting.
 "g. That copies of the signed order modification were provided to the entire Board of Finance, the Town Attorney (Michael Cronin) and the Town Sanitarian.
 "h. That no objections were raised to the Modification, by any person in attendance, at the October 24, 1989 Board of Finance Meeting, CT Page 12341 either as to the directives or the schedule of implementation."
14. Michael Cronin, the Town Attorney, testified at trial that if the order modification had been received by certified mail as required by statute, he would have appealed the order, and because it was not sent by certified mail, he was prevented from filing an appeal. In this regard he claimed that he never even saw the order modification until December. The Court finds this testimony less than credible in light of the fact that he received a copy of the order modification at the October 24th meeting and had attended the October 20th meeting where it was discussed.
In any event, if the order modification had been agreed to by the Town, which the Court believes it was, there would be no right of appeal. General Statutes § 22a-436 provides in pertinent part:
". . . The commissioner may, after the hearing provided for in this section, or at any time after the issuance of his order, modify such order by agreement . . . if he deems such modification advisable . . . and any such modification . . . shall be deemed to be a revision of an existing order and shall not constitute a new order. There shall be no hearing subsequent to or any appeal from any such modification . . ."
Even if this order modification could be considered a new order, and not an order modification (which Attorney Cronin seemed to be claiming at trial), the Court would still hold it to be a valid order. The order modification was in fact sent by certified mail to Clinton and Westbrook as required by § 22a-436, and undoubtedly would have been sent by certified mail to Old Saybrook. However, at the request of the Town Selectman on December 20, 1989, it was instead, hand-delivered to her on December 24. Clearly, the Town and its attorney (who was present at the hearing on December 20th and who received a copy of the order modification on the 24th) could have appealed if the Town or its Attorney had chosen to do so. Yet no one, including the Town Attorney, did anything to object to or appeal from the order. CT Page 12342
In summary, the Court concludes that the Town of Old Saybrook did in fact agree to the Modification of Order No. 4116.
Second: The Town claims that a First Selectman and a Town Attorney are not empowered to bind a town to an agreement that will require the expenditure of roughly twenty million dollars that has not been appropriated at a Town meeting. The evidence shows, however, that the Old Saybrook Board of Selectmen which acted as the Water Pollution Control Authority was most involved in negotiations with the DEP, and it authorized Barbara Maynard (The First Selectman and the chief executive officer as well as the Chairman of the Water Pollution Control Authority) to act in its behalf. Also involved, however, were the Board of Finance, Planning Commissions, Zoning Commissions, Inland Wetland Commissions, the Wastewater Study Committee (an ad hoc committee), Town Attorney, Sanitarians, and the Old Saybrook Director of Health.
Third: The Town claims that the doctrine of "implied contract" is inapplicable to a situation in which a governmental entity issues an order compelling the performance of some activity. The Court finds that the words and deeds of the State and the Town prior to and after the hand delivery of the signed Order No. 4116 Modification show that the Commissioner did modify Order No. 4116 by agreement. It is not necessary to hold that there was an implied contract.
Fourth: The Town claims that General Statutes § 22a-458, requiring municipalities to appropriate funds in order to comply with validly issued orders of the Commissioner, is irrelevant to the question of whether the Modified Order was validly issued. This needs no discussion inasmuch as the Court has found that the modified order was in fact validly issued.
Fifth: The Town claims that a municipality does not "cause pollution" when private individuals residing within its borders do so. The Court finds that Old Saybrook is in fact causing pollution. This finding is based on the findings in Orders No. 3109, 3110, 3111 and CT Page 12343 4116 coupled with the numerous engineering reports conducted by the Town. Since Orders No. 3109, 3110 and 3111 are based upon a finding that Old Saybrook "is maintaining conditions which can reasonably be anticipated to cause pollution of the waters of the State," defendant's failure to abate those conditions, which can cause pollution, by fully complying with those orders is in turn "causing pollution." Similarly, Order No. 4116 is based upon a finding that Old Saybrook is a municipality "in which community pollution problems exist and in which community pollution problems can reasonably be anticipated to occur in the future . . ." While the Town has submitted the engineering report required by Order No. 4116, it has not abated the community pollution problems by implementing the measures its own engineering report recommended or by any other means. "Community pollution problem" is defined in § 22a-423 as "the existence of pollution which, in the sole discretion of the commissioner, can best be abated by the action of a municipality." Thus, by not abating the pollution which it can best abate, Old Saybrook's failure to act results in continuing pollution. Thus, by failing to abate the pollution it is causing pollution.
Sixth: The Town claims that the provisions of § 22a-14
being "supplementary" to other existing regulatory procedures, the Court should remand the parties to such procedures. While the Court "may" remand the parties to such procedures, the Court sees no reason to do so.
Seventh: The Town claims that the Court should dismiss those Counts brought under General Statutes § 22a-14 as brought in the wrong venue. This issue was already decided on a Motion to Dismiss and was denied.
Eighth: The Town claims that if the Court finds against the Town pursuant to General Statutes § 22a-14 it may not impose fines pursuant to that statute. The Court agrees that it should not, and it does not intend to impose fines for the violations set forth in Counts 5 and 7 of the complaint which allege violations of § 22a-14.
Ninth: The Town claims that General Statutes § 22a-427
does not create a cause of action independent of General Statutes § 22a-436. Section 22a-427 states: "No CT Page 12344 person or community shall cause pollution of any of the waters of the State or maintain a discharge of any treated or untreated wastes in violation of any provision of this chapter." The plaintiff has alleged a violation of that statute. The Court finds this to be a valid cause of action.
Tenth: The Town claims it has not failed to comply with the Commissioner's earlier orders (Nos. 3109, 3110, 3111). Although there has been some compliance, the level of compliance has not been sufficient to satisfy the Commissioner. As stated above, information on home inspections submitted by the Town to the DEP in 1991 was incomplete or non-existent for the years 1985 through 1994.
Eleventh: The Town has claimed that no fines should be imposed against the Town. The Court disagrees. However, in determining the amount of any fines to be imposed, the Court has taken into consideration the factors described in Keeney vs. L. S. Construction,226 Conn. 205, 214 (1993). It has considered the fact that there have been some good faith efforts of the Town to comply with the orders, the deterrence of future violations, and the fact that the Town will now be under an obligation to raise a significant amount of money in order to comply with the Court's forthcoming decision.
In summary, the Court finds that the Town of Old Saybrook is a municipality in which a community pollution problem exists under the provisions of Chapter 446k of the General Statutes and that such existence should be abated in accordance with § 22-428. The Court further finds that the defendant has failed to comply with Orders No. 3109, 3110, 3111, and 4116 Modified in violation of § 22a-427 and § 12a-14 et seq. The Court further finds that the legislative body of Old Saybrook has failed to comply with Order No. 4116 Modified, by failing to authorize the necessary funds to comply with said order.
Accordingly, upon hearing the plaintiff's request for a permanent injunction, the Court grants the request and hereby:
I. A. Permanently enjoins the defendant to abate the CT Page 12345 pollution found to exist in Order No. 4116 and Order No. 4116 Modified, and which it is causing in violation of General Statutes § 22a-427, as follows:
(1) On or before June 30, 1995, submit to the Commissioner of Environmental Protection a draft engineering agreement for the design of the wastewater collection facilities to serve the Town of Old Saybrook, and for conveyance and treatment facilities within Old Saybrook with sufficient capacity to serve the needs of the Towns of Old Saybrook, Westbrook, and Clinton (as recommended in the Old Saybrook-Westbrook Joint Wastewater Management Study, dated March 1989).
(2) On or before August 31, 1995, verify to the Commissioner of Environmental Protection that design of the facilities as described in step (1) above has been initiated.
Wastewater Treatment Facilities and Route 1 Interceptor
(3) On or before July 31, 1996, submit to the Commissioner of Environmental Protection for review and approval, plans and specifications for the wastewater treatment facilities and Route 1 interceptor.
(4) On or before December 31, 1996, verify to the Commissioner of Environmental Protection that the construction of the wastewater treatment facilities approved under Step (3) above, has begun.
(5) On or before December 31, 1996, verify to the Commissioner of Environmental Protection that the construction of the wastewater interceptor sewer along Route 1, as approved under Step (3) above, has begun.
(6) On or before December 31, 1998, verify to the Commissioner of Environmental Protection that the wastewater treatment facilities and Route 1 interceptor, whose construction was initiated under Steps (4) and (5) above have been placed in operation.
(7) On or before July 31, 1999, verify to the Commissioner of Environmental Protection that all applicable effluent limitations for the constructed CT Page 12346 wastewater treatment facility are being met.
Wastewater Collector Sewer System
(8) On or before May 30, 1997, submit to the Commissioner of Environmental Protection for review and approval, plans and specifications for the wastewater collector sewer system.
(9) On or before October 31, 1997, verify to the Commissioner of Environmental Protection that the construction of the wastewater collector sewer system has begun.
(10) On or before April 30, 1998, verify to the Commissioner of Environmental Protection that the wastewater collector sewer system has been placed in operation.
B. Permanently enjoins the defendant to fully comply with the requirements of Order No. 3109, Order No. 3110 and Order No. 3111 on an annual and ongoing basis until such time as the plaintiff may withdraw such orders.
C. (1) The defendant is ordered to appropriate the funds necessary to fully comply with Order No. 3109, 3110, 3111 and 4116 Modified, in accordance with General Statutes § 22a-458.
(2) The defendant shall use best efforts to submit to the plaintiff all documents required by this Order in a complete and approvable form. If the plaintiffs notify the defendant that any document or other action is deficient, and does not approve it with conditions or modifications, it is deemed disapproved, and defendant shall correct the deficiencies and resubmit it within the time specified by the plaintiff or, if no time is specified by the plaintiff, within fifteen (15) days of the plaintiff's notice of deficiencies. In approving any document or other action under this Order the plaintiff may approve the document or other action as submitted or performed or with such conditions or modifications as he deems necessary to carry out the purpose of this Order. Nothing in this paragraph shall excuse noncompliance or delay. CT Page 12347
(3) The date of submission to the plaintiff of any document required by this Order shall be the date such document is received by the plaintiff. The date of any notice by the plaintiff under this Order, including but not limited to notice of approval or disapproval of any document or other action shall be the date such notice is personally delivered or the date three (3) days after it is mailed by the plaintiff, whichever is earlier. Except as otherwise specified in this Order the word "day" as used in this Order means calendar day. Any document or action which is required by this Order to be submitted or performed by a date which falls on Saturday, Sunday or legal holiday shall be submitted or performed by the next business day thereafter.
(4) Any document including but not limited to any notice, which is required to be submitted to the plaintiff under this Order shall be signed by a duly authorized representative of defendant and by the individual or individuals responsible for actually preparing such document each of whom shall certify in writing as follows. `I have personally examined and am familiar with the information submitted in this document and all attachments and certify that based on reasonable investigation, including my inquiry of those individuals immediately responsible for obtaining the information, the submitted information is true, accurate and complete to the best of my knowledge and belief, and I understand that any false statement made in this document or its attachments may be punishable as a criminal offense.'
(5) Any document required to be submitted to the plaintiff under this Order shall, unless otherwise specified in writing by the plaintiff be directed to:
 Mr. William Hogan Department of Environmental Protection 11 Water Management Bureau 79 Elm Street Hartford, CT 06106
(6) Any representative of the plaintiff may enter any of the defendant's property without prior notice for purposes of monitoring and enforcing the actions required CT Page 12348 by this Order.
(7) The injunctive provisions of this Judgment are entered under penalty of $1,000.00 per day per violation for the first thirty (30) days of violation, $2,500.00 per day for the second thirty (30) days of violation, $7,500.00 per day for the third thirty (30) days of violation. Beginning with the ninety-first (91st) day of violation the penalty shall increase by $500.00 per day until the statutory maximum of $25,000.00 per day is reached. It shall thereafter continue at that amount until compliance is achieved. So, for example, the ninety-first (91st) day penalty shall be $8,000.00, the ninety-second (92nd) day penalty shall be $8,500.00, and so on. In the event that any of the provisions of this Judgment are violated, the Court may finalize a penalty in this amount and take any other action authorized under the contempt power in order to coerce compliance with the Judgment.
(8) Nothing in this Order shall affect the plaintiff's Authority to institute any proceeding to prevent or abate violations of law, prevent or abate pollution, recover costs and natural resource damages, and to impose penalties for violations of law, including but not limited to violations of any permit issued by the plaintiff. If at any time the plaintiff determines that remedial actions taken by the defendant pursuant to this Order have not successfully abated or prevented pollution, the plaintiff may institute any proceeding to require the defendant to prevent or abate pollution.
(9) Any portions of this Order requiring approval by the plaintiff shall be deemed as requiring approval which shall not be unreasonably withheld. The Court shall resolve any conflict between the parties concerning any impasse over the determination of whether or not approval is being unreasonably withheld.
(10) The Court shall retain jurisdiction in order to monitor compliance with this Judgment. Additional hearings may be scheduled by the Court, at the request of any party, with notice being provided to all parties. At any such hearing, the Court shall consider whether or not the injunctive provisions on the Judgment have been CT Page 12349 complied with, whether or not any further orders are necessary, and, if any provision of this Judgment has not been complied with, whether or not to hold the offending party in contempt and sanction the offending party.
(11) Nothing in this Order shall relieve the defendant of any obligations under applicable federal, state and local law.
II. Civil Penalty
The civil penalty against defendant is delineated as follows:
Order No. 3109
$20 per day x 1133 days (6/11/91-8/3/94) $22,660.00
Order No. 3110
$20 per day x 1133 days (6/11/91-8/3/94) 22,660.00
Order No. 3111
$20 per day x 1133 days (6/11/91-8/3/94) 22,660.00
Order No. 4116 Modified
$20 per day x 1504 days (5/1/91-8/3/94) 30,080.00 ---------- TOTAL $98,060.00 ==========
Judgment may enter accordingly.
Allen, STR